## LANGEN v RUSHTON

Docket No. 74836. Submitted June 6, 1984, at Lansing.—Decided November 6, 1984.

Plaintiff, Thomas E. Langen, brought an action in the Washtenaw Circuit Court seeking damages for injuries sustained in a collision between his motorcycle and a vehicle driven by Nancy K. Rushton. The accident occurred as Mr. Langen was driving on North Maple Street and Ms. Rushton entered the street from the parking area of the Maple Village Shopping Center. Named as defendants were Nancy K. Rushton, the City of Ann Arbor and Maple Jackson Associates, the owner of the shopping center. After certain motions and stipulations, defendant Rushton was dismissed. Summary judgment was granted, Edward D. Deake, J., as to certain counts in the complaint to defendant Maple Jackson Associates including the count based on a theory of negligence because of the plaintiff's failure to state a claim upon which relief could be granted on that issue. The count of plaintiff's complaint alleging a nuisance was not affected by the summary judgment. Plaintiff moved for an order of final judgment on the summary judgment so that he could appeal. His motion was granted and the plaintiff appeals from the order of final judgment. *Held:*

1. Where the parking lot of a shopping center abuts a public highway, it is entirely foreseeable that a serious accident may occur between a customer entering or exiting from the parking lot and a highway motorist. Under such circumstances, it is wholly just to impose a burden upon a defendant landowner to design, develop and maintain a parking area so as to prevent

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 879.
61A Am Jur 2d, Pleading § 231.
[2, 3] 57 Am Jur 2d, Negligence §§ 33, 34.
[3-5] 38 Am Jur 2d, Garages, and Filling and Parking Stations §§ 81, 91.
39 Am Jur 2d, Highways, Streets, and Bridges §§ 10, 365.
62 Am Jur 2d, Premises Liability §§ 23, 27, 33.
Liability of owner or operator of parking lot for personal injuries allegedly resulting from condition of premises. 38 ALR3d 10.

an unreasonable risk of harm to motorists traveling on adjacent highways.

2. A landowner must maintain his own land so as not to injure users of an abutting street.

3. Assuming that the allegations in plaintiff's complaint are true, defendant Maple Jackson Associates has failed to conform to a legal standard of reasonable conduct.

4. A balancing of the risk of harm engendered by the condition of the shopping center exitway in this cause against the utility of a tree placed on the median nearby for aesthetic purposes results, in this case, in a determination that, as a matter of law, defendant Maple Jackson Associates has a duty to the traveling public to provide motorists leaving its parking lot with an unobstructed view of oncoming traffic on North Maple Street.

5. The allegations in plaintiff's complaint, if assumed to be true, state a claim upon which relief can be granted. The trial court erred in granting the summary judgment in regard to the negligence count.

The order of summary judgment is vacated and the case is remanded for further proceedings.

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — APPEAL — COURT RULES.

A motion for summary judgment based upon a failure to state a claim upon which relief can be granted tests the legal sufficiency of the allegations in the plaintiff's complaint; the Court of Appeals, in reviewing the granting of such a motion, assumes that the factual allegations in the complaint are true and determines whether the claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right of recovery (GCR 1963, 117.2[1]).

2. NEGLIGENCE — DUTY — TORTS.

Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person; the element of duty in a negligence action is ordinarily one of law for the court to decide.

3. HIGHWAYS — PROPERTY — TORTS — NEGLIGENCE — PARKING LOTS.

It is entirely foreseeable that a serious accident may occur between a customer entering or exiting from a parking lot and a highway motorist where the parking lot of a shopping center abuts a public highway; the imposition of a duty upon a

defendant landowner to develop and maintain a shopping center, *including the parking area, so as not to injure a motorist* traveling on adjacent highways is a logical outgrowth of the settled duty of a landowner to exercise ordinary care in maintaining the premises in a reasonably safe condition in order to prevent injury to persons traveling along an adjacent street, sidewalk or public way.

4. Highways — Property — Torts — Negligence — Parking Lots.
The condition of a shopping center's parking lot exitway may be found to present a serious risk of harm that is relatively foreseeable where, upon exiting from the parking lot, the view of the adjacent public highway is completely blocked and a motorist must enter the road before oncoming traffic can be seen.

5. Highways — Property — Torts — Negligence — Parking Lots.
A landowner who fails to make use of recent technological improvements or fails to minimize the possibility of accidents at the land's parking lot's exits or entrances may be found liable for damages resulting therefrom if the landowner's challenged conduct is unreasonable, *i.e.,* the risk of injury engendered by his conduct outweighs its utility.

*Roberts & Manchester, P.C.* (by *Thomas C. Manchester* and *Randall S. Schau),* for plaintiff.

*Douvan & Barnett* (by *Gordon J. Barnett, Jr.),* for Maple Jackson Associates.

Before: GRIBBS, P.J., and BRONSON and SHEPHERD, JJ.

BRONSON, J. Plaintiff, Thomas E. Langen, appeals as of right from an order of summary judgment entered in favor of Maple Jackson Associates on a negligence count.[1]

The parties have stipulated to the following facts:

"On September 18, 1981, Nancy Rushton drove her

---

[1] In a second count, plaintiff's complaint alleged that defendant Maple Jackson had created and maintained a nuisance. The order of summary judgment did not affect the latter claim.

vehicle in an easterly direction out of the Maple Village Shopping Center parking area and onto North Maple Street. All vehicles, including Ms. Rushton's, leaving said shopping center parking area were required by a regular, approved, red octagonal stop sign to stop before entering North Maple Street and yield to on-coming vehicles. At the same time, plaintiff was operating his motorcycle in [sic] southerly direction on North Maple Street. By driving onto North Maple Street, Ms. Rushton drove in front of plaintiff, causing a collision between her vehicle and plaintiff's motorcycle.

"That at the time of the accident, defendant Maple Jackson owned, controlled and maintained the Maple Village Shopping Center parking area and its entrance and exit ways to North Maple Street. Separating the exit way used by Ms. Rushton and the shopping center's entrance way was a median. Existing within this median was a small tree. The median and the tree were within the area owned, controlled and maintained by defendant Maple Jackson."

Plaintiff's first amended complaint alleged in part with regard to defendant Maple Jackson:

"13. That defendant, Maple-Jackson Associates, owed a duty to the public to design, develop and maintain its parking area in such a way as to minimize the possibility of accidents involving motor vehicles entering and leaving said parking area, and that said duty included the creation and maintenance of vehicle exits allowing an unobstructed view of southbound North Maple Street traffic at and near the various exits from its parking lot.

"14. That defendant, Maple-Jackson Associates, intentionally and/or negligently caused and allowed various trees to be planted and to remain in the median of the entrance/exit way to said shopping center parking lot.

"15. That the location of said trees was such that defendant, Nancy K. Rushton, when preparing to leave said parking lot and stopping at said stop sign, at the crosswalk, did not and could not have a clear and unobstructed view of on-coming traffic traveling south on North Maple Street, including plaintiff."

On October 29, 1983, the circuit court ruled that plaintiff's allegations failed to state a claim upon which relief can be granted and entered an order of summary judgment pursuant to GCR 1963, 117.2(1). In reviewing a grant of summary judgment under GCR 1963, 117.2(1), this Court assumes that the factual allegations in the complaint are true and determines whether the claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right of recovery. *Aisner v Lafayette Towers,* 129 Mich App 642, 645-646; 341 NW2d 852 (1983).

The order of summary judgment rested on the circuit court's determination that defendant Maple Jackson owed no duty to plaintiff which would support a negligence claim. "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977), *reh den* 401 Mich 951 (1977). (Footnote omitted.) Ordinarily, the element of duty in a negligence action is one of law for the court to decide. *Moning v Alfono, supra,* p 438; *Aisner v Lafayette Towers, supra,* p 645.

In *Samson v Saginaw Professional Building, Inc,* 44 Mich App 658; 205 NW2d 833 (1973), *aff'd* 393 Mich 393; 224 NW2d 843 (1975), this Court was asked to decide whether a landlord and owner of a building who leased space to a state mental health clinic could be held liable for injuries sustained by another tenant's employee when she was attacked by a patient of the clinic. We readily admitted that policy considerations weighed heavily in our decision to impose a duty upon the defendant landowner to the injured plaintiff. We stated:

"Since the relationship between the parties is tangential and the causation chain attenuated, we are placed squarely in the quagmire of *foreseeability.* Essentially, a duty is an obligation 'recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks'. Professor William L. Prosser finds the interrelationship between negligence and risk as follows:

" 'Negligence is a matter of risk—that is to say, of recognizable danger of injury. It has been defined as "conduct which involves an *unreasonably* great risk of causing damage," or, more fully, conduct "which falls below the standard established by law for the protection of others against *unreasonably* great risk of harm.' " (Emphasis added.)
The emphasis is placed upon the unreasonable nature of the risk since all conduct involves some recognizable but remote risk to others and society does not require a person to guard against *all* such risks unless the circumstances justify the imposition of absolute liability.

"The inquiry becomes whether the risk is unreasonable under the specific circumstances with the societal value of the interest sought to be protected being the primary consideration. Prosser offers foreseeability as the yardstick for measuring such reasonableness as follows:

" 'The idea of risk necessarily involves a *recognizable* danger, based upon some knowledge of the existing facts, and some reasonable belief that harm may follow. A risk is a danger which is *apparent,* or *should be apparent,* to one in the position of the actor.' (Emphasis added.)
Adoption of such a foreseeability test is found in *May v Goulding,* 365 Mich 143, 152-153; 111 NW2d 862 (1961). *Cf. Johnston v Harris,* 387 Mich 569; 198 NW2d 409 (1972). Although foreseeability is at best an elusive standard, suffice it to say that '[a]s the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less'.

"* * * We justify imposing a duty upon defendant by balancing the societal interests involved, severity of the risk, burden upon defendant, likelihood of occurrence, and relationship between the parties." *Id.,* pp 661-663. (Footnotes omitted.) (Emphasis in original.)

Unquestionably, society has an interest in the safety of those traveling on public roads and highways. Society, as well as the landowner, benefits from the convenience of shopping center developments located in close proximity to public access. However, that same close proximity poses a serious risk of injury to motorists passing by shopping center parking lots. With the ever-increasing development of shopping centers and malls and the sprawl of adjacent parking lots, it only becomes increasingly difficult for public motorists to avoid routes paved with new development. Where the parking lot of a shopping center abuts a public highway, it is entirely foreseeable that a serious accident may occur between a customer entering or exiting from the parking lot and a highway motorist. Under such circumstances, we think it wholly just to impose a burden upon a defendant landowner to design, develop and maintain a parking area so as to prevent an unreasonable risk of harm to motorists traveling on adjacent highways.

We do not rest our decision on public policy considerations alone. Our courts have long held that a landowner must maintain his or her own land so as not to injure users of an abutting street.

One day long ago, before the development of shopping malls, Kathryn Bannigan was walking by a building when a window fell out and injured her. She sued the administrator of the estate of the owner of the building. In finding the defendant liable to Bannigan, the Michigan Supreme Court held that the administrator, being in lawful possession of the building, had a duty to keep the building in a safe condition, so as to protect travelers along the streets. *Bannigan v Woodbury,* 158 Mich 206, 207; 122 NW 531 (1909).

This principle was recognized in *Grimes v King,* 311 Mich 399; 18 NW2d 870 (1945), where the

Court held that although a landowner is not an insurer of persons on abutting highways, persons traveling upon a public street have a right to absolute safety, while in the exercise of ordinary care, against all accidents arising from things so situated with reference to the street that if they fall they will injure the travelers.

Imposition of a duty upon defendant to develop and maintain its shopping center, including the parking area, so as not to injure a motorist traveling on adjacent highways is a logical outgrowth of the settled duty of a landowner toward passing-by-foot travelers.[2] The Restatement of Torts exposes the landowner to liability to persons outside of the landowner's property. 2 Restatement Torts, 2d, § 364, pp 259-260, provides:

> "*Creation or Maintenance of Dangerous Artificial Conditions*
>
> "A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if
>
> "(a) the possessor has created the condition, or
>
> "(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or
>
> "(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it."

Furthermore, the Restatement specifically addresses the duties owed by a landowner to travelers on adjacent highways:

---

[2] SJI2d 19.09 states: "A possessor of [land/premises/ a place of business] has a duty to exercise ordinary care in maintaining [his/her] premises in a reasonably safe condition in order to prevent injury to persons traveling along an adjacent [street/or/sidewalk/or other/public way]."

"*Conditions Dangerous to Travelers on Adjacent Highway*

"A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

"(a) are traveling on the highway, or

"(b) foreseeably deviate from it in the ordinary course of travel." 2 Restatement Torts, 2d, § 368, p 268.

Moreover, the Restatement recognizes the applicability of new assignments of duty in the context of modern urban development. In addition to subjecting a landowner to liability for unreasonably risky artificial conditions, the Restatement acknowledges that under certain circumstances urban landowners should be held liable for physical harm caused to others outside of the land resulting from *natural* conditions on the land.

"*Natural Conditions*

"(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

"(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway." 2 Restatement Torts, 2d, § 363, p 258.

We cannot subscribe to a rule of law which would relieve the modern urban landowner from responsibility for foreseeable consequences caused by activity which poses an unreasonable risk of

harm. If, upon exiting from defendant's shopping center parking lot, the view of the road is completely blocked and a motorist must enter the road before oncoming traffic can be seen, the condition of the exitway presents a serious risk of harm that is relatively foreseeable. On the other hand, the utility of a tree placed on the land for aesthetic purposes is minimal. If we assume that the allegations in plaintiff's complaint are true, defendant has failed to conform to a legal standard of reasonable conduct.

We disagree with defendant that the duty we have imposed converts landowners into insurers of the safety of adjacent highway travelers. Landowners who fail to make use of recent technological improvements or fail to minimize the possibility of accidents at parking lot exits or entrances would only be held liable if their challenged conduct is unreasonable, *i.e.,* the risk of injury engendered by their conduct outweighs its utility. *Moning v Alfono, supra,* p 450. The outcome of that balancing will depend on the circumstances presented in a given case. In this case, the drawing of that balance results in our determination that, as a matter of law, defendant has a duty to the traveling public to provide motorists leaving its parking lot with an unobstructed view of oncoming traffic on North Maple Street.

Alternatively, defendant argues that summary judgment was properly entered because defendant Rushton's failure to properly observe the approaching traffic before entering the roadway was an intervening and superseding cause of the accident. A motion brought pursuant to GCR 1963, 117.2(1) tests only the legal sufficiency of the allegations in plaintiff's complaint. *Karr v Board of Trustees of Michigan State University,* 119 Mich App 1; 325 NW2d 605 (1982), *lv den* 417 Mich

1100.8 (1983). In his complaint plaintiff alleges that, due to the positioning of the tree in the median, defendant Rushton "did not and could not" see oncoming traffic. The allegations in plaintiff's complaint, if assumed to be true, state a claim upon which relief can be granted.

We vacate the order of summary judgment and remand this case to the circuit court for further proceedings.